## Luke Stuart, Administrator, Plaintiff in Error, v. E. C. Lott, Defendant in Error.

### Gen. No. 25,940.

1. PLEADING—*when replication sets up good issue of fact to plea of set-off.* A replication that plaintiff's intestate was not indebted to the defendant in manner and form as alleged in defendant's plea of set-off, and concluding to the country, set up a good issue of fact, as it joined in the issue raised by the plea of set-off and prayed that the issue whether the decedent was or was not indebted to defendant as claimed in the plea of set-off, and denied in the replication, might be inquired of by the country.

2. PLEADING—*when replication denying right of set-off demurrable.* A replication that defendant should not be allowed his set-off as pleaded, because the claim it involved had not been exhibited within a year after the issuance of letters of administration had been issued in the estate of plaintiff's intestate, was subject to demurrer, because the facts set up would not, even if true, preclude defendant from pleading his set-off, although it might have affected the form of the judgment which defendant might recover on his plea.

3. APPEAL AND ERROR—*when objection to plea of set-off cannot be urged on appeal.* Where the contention that the demand claimed as set-off was not the proper subject of set-off, was not raised by demurring to the plea of set-off or by proper and specific objections to the evidence offered under the plea of set-off, but issue was joined and the hearing was had on the merits, plaintiff cannot urge such contention on a writ of error to review the judgment.

4. EXECUTORS AND ADMINISTRATORS—*when claim presented in time*. A claim was exhibited within one year, so as to entitle defendant to the order directing payment of his judgment in due course of administration as a claim of the seventh class, where letters were issued on December 1, 1917, and such claims were set up in two pleas of set-off filed, respectively, in August, 1918, and December, 1919, although the claim was not filed in the probate court until August, 1919.

5. INTEREST—*date from which allowed on set-off*. Evidence reviewed in a case in which defendant's plea of set-off involved the purchase of stock and defendant claimed interest for a long period, and *held* that there was no basis for making an allowance of interest under the statute at 5 per cent "on money due in the settlement of account from the day of liquidating accounts * * * and ascertaining the balance" (Cahill's Ill. St. ch. 74, ¶ 2), but that defendant was entitled to interest from a date at which decedent admitted that he was indebted to defendant in a stated amount "and interest for some years."

Error to the Circuit Court of Cook county; the Hon. DAVID M. BROTHERS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1920. Modified and affirmed. Opinion filed November 2, 1921. Rehearing denied November 15, 1921.

CUTTING, MOORE &. SIDLEY, CHARLES R. NAPIER and ROBERT L. BRACKEN, for plaintiff in error; CHARLES S. CUTTING and D. F. McPHERSON, of counsel.

WILLARD M. McEWEN and HARRY W. McEWEN, for defendant in error.

MR. JUSTICE THOMSON delivered the opinion of the court.

In his lifetime, Bryant H. Barber, with his mother, Lucie H. Barber, was engaged in the banking business in the City of Polo, in the State of Illinois. They were in business as a copartnership under the name of Barber Brothers & Company. A brother of Bryant H. Barber had previously had an interest in the business which the latter had acquired by purchase.

In 1912, the defendant Lott had delivered to Bryant

H. Barber two promissory notes, one for $5,000 and the other for $2,500. Barber had indorsed both of these notes and at the time of his death they were in the possession of the bank.

In 1905, Barber had purchased certain stocks of the defendant Lott, in part payment for which he paid certain notes of the latter, held by a Chicago bank, to secure which the stock had been deposited as collateral, and on this purchase Bryant continued to owe Lott a balance of $25,000 up to the time of the death of the former.

Barber died on November 16, 1917, and on December 1, 1917, his estate was probated and letters of administration were issued to one Hilger and the present plaintiff in the suit at bar, Stuart. Later Hilger resigned as administrator, leaving the plaintiff as sole administrator of the estate of Barber.

It appears that in connection with the administration of Barber's estate, receivers were duly appointed of the partnership property and effects by the county court of Ogle county, under the provisions of the statute. (Ill. St. ch. 3, sec. 90, Cahill's Ill. St. ch. 3, ¶ 91.)

In June, 1918, the receivers of the partnership estate brought this action against the defendant Lott on the two notes he had given Barber. In August of that year the defendant pleaded nonassumpsit and want of consideration and gave notice of a special defense which was to the effect that at the time of the commencement of this suit, the copartnership of Barber Brothers & Company was indebted to him in the sum of $25,000.

In July, 1919, the receivers of the partnership estate presented their final report to the county court of Ogle county, wherein they represented that the defendant's notes, above referred to, were still in their hands. They further set forth in their report that they had brought this suit at bar on those notes but they made no mention of defendant's notice of special defense.

They stated that they had investigated the financial responsibility of the defendant Lott and were of the opinion that if a judgment were recovered against him it could not be collected, and they further set forth that the surviving partner, Lucie H. Barber, had consented to the delivery of these notes, by them, to the administrator of the estate of Bryant H. Barber, in order that the receivership might be closed and the expenses of continuing the same avoided. Such written consent of Lucie H. Barber was attached to the receiver's report. Accordingly, the county court of Ogle county entered an order directing the receivers to deliver the notes referred to, to the administrator of the estate of Bryant H. Barber and the latter was, by the court, "ordered and directed to collect said notes, if possible, for the use and benefit of the said copartnership creditors."

In August, 1919, the defendant Lott filed a claim against the estate of Bryant H. Barber, in the county court of Ogle county, for $25,000, being the balance due him from deceased on the sale of the stock referred to above.

In November, 1919, without objection on the part of the defendant herein, Luke Stuart, administrator of the estate of Bryant H. Barber, deceased, was substituted as party plaintiff in this suit, in lieu of the receivers.

On December 3, 1919, Lott filed pleas to the declaration as amended by the substitution of Stuart as plaintiff, again pleading nonassumpsit and want of consideration and he also filed a plea of set-off, setting up that at the commencement of this suit the personal representative of the deceased was indebted to him in the sum of $50,000, being the balance of purchase money owing from deceased in his lifetime on the purchase of certain stocks, said balance being $25,000 with interest at 5 per cent from the date of sale, November 1, 1906.

The issues were submitted to the trial court without the intervention of a jury. During the hearing of this case, by leave of court, the plaintiff replied double to the pleas of the defendant then on file and by those replications he set up, first, the statute of limitations of 5 years and second, that the defendant had filed his claim covering the subject-matter of his set-off in the county court of Ogle county and therefore had another action pending in this matter in another jurisdiction. To these replications, the defendant demurred *ore tenus* and those demurrers were sustained by the court. It further appears from the record that on the same day that the trial court entered its findings and 5 days before the court entered the final judgment, in this case, from which this appeal has been taken, on leave of court, the plaintiff filed further replications to the pleas of the defendant then on file. In those replications, the plaintiff pleaded (1) that his testator, Barber, was not indebted to the defendant in manner and form as the defendant had in his plea of set-off alleged, and this the plaintiff prayed might be inquired of by the country; and (2) that the defendant should not be allowed his set-off, as pleaded, because the claim it involved had not been exhibited within a year after the letters of administration had been issued in the estate of Barber, the deceased. The defendant demurred *ore tenus* to these replications also and the court sustained the demurrers and the plaintiff elected to stand by his replications.

In our opinion, the first of these last two replications was not subject to demurrer but the second one was. The first of the two replications set up a good issue of fact,—it joined in the issue raised by defendant's plea of set-off and prayed that that issue of whether the deceased, Barber, was or was not indebted to the defendant Lott as claimed in the plea of set-off, and denied in the replication, might be inquired of

by the country.   The second of the two replications referred to set up facts which, even if true, would not preclude the defendant from pleading his set-off, although it might have affected the form of the judgment which the defendant might recover on his plea.   The demurrer to that plea was therefore properly sustained.

After the hearing the court found that Barber had sole control of the partnership business and was to all intents and purposes the owner thereof and that the two notes on which this action is based, for $5,000 and $2,500 respectively, were given without consideration and as an accommodation to Bryant H. Barber and that the defendant was not liable thereon to the plaintiff.   The court further found that the defendant had made out his case as set forth in his plea of set-off,—that Bryant H. Barber, in his lifetime, became and was indebted to the defendant in the sum of $25,000, on an open account for the balance of the purchase price of certain shares of stock.   The court accordingly entered judgment in favor of the defendant Lott and against the plaintiff Stuart, as administrator, for $25,000, directing said sum to be paid by the administrator of the estate of the said Bryant H. Barber, "out of the assets of his individual estate in the due course of administration, as a claim of the seventh class."

From that judgment the plaintiff administrator has perfected this appeal, and the defendant has assigned cross errors, contending that the trial court erred in refusing to include interest in the judgment.

In support of this appeal, the plaintiff makes two contentions, (1) that the defendant's claim against Barber, or his personal representative individually, is not the proper subject of set-off in this suit, begun by the receivers of the partnership estate, and later carried on by the administrator of the estate of Barber, pursuant to the order of the county court of Ogle

county, for the benefit of the partnership creditors; and (2) that the claim of the defendant which he attempts to set off was not exhibited within a year and therefore, in any event, defendant could not be entitled to an order directing that his judgment be paid by the administrator in due course of administration as a claim of the seventh class.

As to the first contention, it is our opinion that the plaintiff is in no position to raise the point now. He did not raise it by demurring to the plea of set-off. He did not raise it by proper and specific objections to the evidence offered by the defendant, on the issue raised by the plea. On the contrary, the plaintiff joined issue on the question by his replication and the whole hearing in the trial court was had on the merits of the question of whether the deceased was indebted to the defendant, as claimed, or not.

As to the second contention, we are of the opinion that the trial court was warranted, under the evidence, in finding that the defendant had exhibited his claim within a year after the letters of administration were issued in the estate of Barber, the deceased. That the claims set up in the two pleas of set-off that were filed, one in August, 1918, and the other in December, 1919, were one and the same, is not denied. Further, we are unable to say from the record that the finding of the trial court, to the effect that Barber had sole control and was manager of the banking business of Barber Brothers & Company and was to all intents and purposes the owner thereof, is against the manifest weight of the evidence. Nominally, the mother of the deceased, Mrs. Lucie H. Barber, had a half interest in the business but, as one witness put it, "she never got any money except the living expenses and the running of the house." The deceased, Barber, and the partnership bank, being "to all intents and purposes" the same, and this suit having been begun by the receivers of the partnership assets, appointed by

the court in connection with the administration of the estate of Barber, deceased, the claim of the defendant, as alleged in his set-off, as originally filed, which was within one year after the letters of administration were issued in the estate, was then exhibited by the defendant within the meaning of the statute. (Ill. St. ch. 3, sec. 70, Cahill's Ill. St. ch. 3, ¶ 71.)

As stated above, the defendant contends that the trial court erred in refusing to include interest on the judgment entered in his favor, and in this connection it is the position of the defendant that interest should be allowed from the time of the original transaction, involving the purchase of the stock from him by Barber, which was in the fall of 1905. It appears from the record that it was not until March, 1906, that Barber took up the notes of the defendant to the extent of $50,000, held by the bank and in connection with which the bank held the stock as security and it was at that time, apparently, that the bank delivered the stock to Barber. It further appears that the stock continued to remain in the defendant's name on the books of the corporation until July, 1908, at which time it was transferred on the books from the defendant to Barber. It also appears by the testimony of one Hilger, who acted as the "confidential man" of Barber, that some time in the fall of 1915, Barber told the witness that he had been owing the defendant Lott $25,000 and interest for a number of years, and that he, Barber, or his bank, held several of Lott's notes which were, at least to a certain amount, accommodation notes and which he did not expect Lott to pay; that he asked the witness to see Lott and assure him that he would pay his indebtedness as soon as he could. This indebtedness from Barber to Lott was mentioned by the former to Hilger, according to the testimony of the latter, on several later occasions and on one occasion in the early part of 1917, Hilger testified that Barber said to him, in referring to his indebtedness, "I am will-

ing, if Lott will give up the interest, to give him that $25,000 and pay his notes besides," apparently referring to the accommodation notes above mentioned. Hilger further testified that on one occasion Barber asked him to see Lott and find out if he would accept "the $25,000 in cash and the payment of the note"; that he did see Lott and the latter said that he would not give up the interest because he knew Barber was in a position to pay it.

There is no evidence to the effect that at the time of the original transaction there was any settlement of the account by the parties or any agreement to the effect that the purchase price of the stock was to be considered as $75,000. There is some evidence to the effect that in 1917, Hilger had made some entries in a small account book, at the direction of Barber, from another similar book kept by the latter, which bore the date, October 20, 1905, and contained the words "By cash, E. C. Lott, S. O. C. 33-34-35-36-37 (the stock purchased by Barber from Lott), $25,000," and another item under date of October, 1906, reading "E. C. Lott, to cash, interest, 1 yr., 6%, $1,500." To prove that the purchase of the stock should be considered on the basis of a price of $75,000, the defendant introduced evidence to the effect that the stock was worth not less than $150 a share. On the basis of that value the stock transaction would call for $75,000 or $25,000 over and above the amount of the notes of the defendant which were held by the bank and in connection with which the stock was deposited as collateral.

Under the statute the defendant would be entitled to interest at 5 per cent "on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance." In our opinion, there is no basis for making any allowance for interest to the defendant, Lott, prior to the fall of 1915, but there was evidence in the record that

at least at that time, the deceased, Barber, distinctly acknowledged not only that he was indebted to the defendant, Lott, but that the amount of the indebtedness was $25,000 "and interest for some years," but there is nothing to show for how long a time he admitted the interest had been running. In our opinion, the defendant should be allowed interest on the sum of $25,000 at 5 per cent from December 1, 1915. That interest up to this date amounts to $7,395.83.

For the reasons given, the judgment of the circuit court will be modified by changing the amount and making it $32,395.83 and in all other respects the judgment of the circuit court is affirmed and judgment is entered in this court in favor of the defendant Lott on his plea of set-off, for $32,395.83.

*Judgment modified and affirmed.*

O'CONNOR, P. J., and TAYLOR, J., concur.